**Thomas W. WOODS**

v.

**Louis W. SULLIVAN, M.D., Secretary of Health and Human Services.**

**No. B–88–0213–CA.**

United States District Court,
E.D. Texas,
Beaumont Division.

April 15, 1991.

John Dudley Rutland, Beaumont, Tex., for plaintiff.

Steve Mason, Asst. U.S. Atty., Tyler, Tex., for defendant.

## MEMORANDUM ORDER

COBB, District Judge.

On August 26, 1987, the plaintiff, Thomas W. Woods (Woods), filed an application with the defendant, the Secretary of Health and Human Services (the Secretary) for supplemental security income based on disability. His application was denied initially and on reconsideration. He then requested and received a *de novo* hearing before an Administrative Law Judge (ALJ). The ALJ found Woods was not disabled within the meaning of the Social Security Act, 42 U.S.C. §§ 401 *et seq.* The Appeals Council declined to review the ALJ's decision. Accordingly, the ALJ's decision became the final decision of the Secretary. Woods now appeals the Secretary's decision to this court, pursuant to 42 U.S.C. § 405(g).

## THE FACTS

On December 29, 1985, Woods was working as a roughneck on an oil rig. R. 11, 24. As he jumped down from the rig, his glove caught on an object, and he sprained his back severely. R. 78, 105. He saw his personal physician, who prescribed medication and rest. R. 80. The pain in his lower back and left leg, however, continued. Woods was then referred to Dr. Charles George.

George examined Woods on January 23, 1986. R. 80–81. George recommended a lumbar CT scan. R. 81. This scan was performed January 31, 1986, and indicated disc pathology at both the L3–4 and L4–5 interspaces. R. 82, 83. Woods was then referred to Dr. M.E. Faulk. R. 83.

On February 20, 1986, Faulk performed a laminectomy to remove a herniated lumbar disc at L4–5. R. 88. Woods recovered well from the surgery, and he was discharged "much improved." R. 85. Woods was seen in the office by Dr. Faulk several times following the surgery, and initially seemed to be making good progress. R. 94.

Unfortunately, beginning in August, 1986, Woods began experiencing increased pain. R. 105. He was then referred to Dr. William Donovan. R. 105. In December, 1986, Donovan ordered a myelogram, which revealed a herniated nucleus pulposus of the L3–4, left, L4–5, left and recurrent, and L5–S1, left. R. 111.

Accordingly, on January 6, 1987, Donovan performed surgery on Woods, removing ruptured discs at L3–4, L4–5, and L5–S1. R. 133. At L4–5, the site of the previous surgery, Donovan performed a reexploration with removal of recurrent disc. R. 103. Again, for a period of time, Woods experienced good recovery and improvement. R. 133.

However, in July 1987, Wood again was experiencing increased pain. On July 28, 1987, a second lumbar myelogram was performed. R. 128. This myelogram revealed a possible recurrent disc. R. 128. As of August 24, 1987, the date of the hearing before the ALJ, a conservative course of treatment had been followed. R. 128.

Woods testified before the ALJ he was in constant pain, took pain medication when the pain became too intense, could not walk or sit for any prolonged period, and could not bend, stoop, or lift. R. 26–30. Linda Woods, the plaintiff's wife, testified Woods could not sleep through the night, and his back needed to be massaged frequently. R. 30.

### THE LAW

■ By law, the only question before this court is whether substantial evidence is in the record to support the Secretary's decision. 42 U.S.C. § 405(g). The court may not reweigh the evidence or try the issues *de novo*. *Hollis v. Bowen*, 837 F.2d 1378 (5th Cir.1988). If the court finds the Secretary's decision is supported by substantial evidence, it must be affirmed. *Richardson v. Perales*, 402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971).

The Secretary must follow a five-step process when making a decision regarding disability. This process is described at 20 C.F.R. § 404.1520. First, is the claimant currently working? Second, does the claimant have a severe impairment? Third, does the impairment meet or equal an impairment listed at 20 C.F.R. Part 404, Subpart P, Appendix 1? Fourth, does the impairment prevent the claimant from doing past relevant work? Fifth, does the impairment prevent the claimant from doing any other work?

In the instant case, the ALJ determined Woods was not working and had a severe impairment. The ALJ based his adverse decision on his conclusion that Woods' impairment did not prevent him from doing his past relevant work as a pipe inspector.

■ The court finds this conclusion was not based on substantial evidence. First, the treating physicians made it clear

Woods could not bend from the waist, stoop, or lift. R. 129. Woods' testimony regarding his ability to perform those activities is consistent with that restriction. The ALJ's finding that the evidence indicates Woods can perform light work, involving standing, bending, stooping, and lifting objects weighing up to 20 pounds, is simply not supported by the evidence.

Additionally, no evidence was presented regarding whether Woods' past relevant work as a pipe inspector was actually light work. No vocational expert testified regarding whether someone with Woods' restrictions and qualifications could perform light work or sedentary work. There is no evidence in the record to enable the ALJ to make a finding on possible sedentary work Woods could perform.

### CONCLUSION

Accordingly, the Secretary's motion for summary judgment is DENIED. Woods' motion for summary judgment is GRANTED. This case is REVERSED and REMANDED to the Secretary for further proceedings in accordance with this opinion.